UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ANTHONY TREJO,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:22-cv-00192-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 16). |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 10).

      Plaintiff presents the following issues:

1. Whether the ALJ failed to explain his departure from the medical source opinion of the State agency physician, S. Amon, M.D.

2. Whether the ALJ failed to properly evaluate the functional effects and progressive nature of Plaintiff's multiple sclerosis.

3. Whether the ALJ failed to provide germane reasons for discounting the lay witness statements of Plaintiff's father, Daniel Trejo.

1  (ECF No. 12, p. 6).

2  Having reviewed the record, administrative transcript, the parties' briefs, and the
3  applicable law, the Court finds as follows:

4  **I.   ANALYSIS**

5  **A.   Dr. Amon's Opinion**

6  Plaintiff argues that the ALJ erred by "fail[ing] to explain his departure from the medical
7  source opinion of State agency physician, S. Amon, M.D." (ECF No. 12, p. 10). Specifically, the
8  ALJ erred by finding the opinion persuasive but "either overlook[ing] or disregard[ing] Dr.
9  Amon's assessment that Plaintiff required an assistive device for longer ambulation." (*Id.* at 11).

10 Because Plaintiff applied for benefits in 2019, certain regulations concerning how ALJs
11 must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20
12 C.F.R. §§ 404.1520c, 416.920c. (AR 118). These regulations set "supportability" and
13 "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20
14 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician
15 hierarchy," deference to specific medical opinions, and assignment of specific "weight" to a
16 medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions"
17 and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-
18 (b); 416.920c(a)-(b).

19 As for the case authority preceding the new regulations that required an ALJ to provide
20 clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the
21 Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw
> according special deference to the opinions of treating and examining physicians
> on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a)
> ("We will not defer or give any specific evidentiary weight, including controlling
> weight, to any medical opinion(s) . . ., including those from your medical
> sources."). Our requirement that ALJs provide "specific and legitimate reasons"
> for rejecting a treating or examining doctor's opinion, which stems from the
> special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise
> incompatible with the revised regulations. Insisting that ALJs provide a more
> robust explanation when discrediting evidence from certain sources necessarily
> favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.

With these standards in mind, the Court turns to the ALJ's discussion of Dr. Amon's opinion:

> The prior administrative medical findings of S. Amon, M.D.; Elizabeth Covey, Psy.D.; and Howard S. Leizer, Ph.D. are persuasive. (Exhibits 1A, 3A). As State agency consultants, the foregoing sources are familiar with the disability determination process and the Regulations, including the terms of art and legal and medical standards set forth therein. More significantly, they based their findings upon comprehensive reviews of the record, including the claimant's longitudinal medical history and self-reported daily activities. Their findings are consistent with the same. Indeed, their findings are accompanied by detailed narratives that explain what evidence the consultants relied upon when rendering their conclusions. Although some evidence has been added to the record since the State agency consultants' reviews thereof, that evidence is cumulative of what was already present in the case record. That is, the additional evidence does not document an appreciable worsening in the claimant's condition since the State agency consultants' findings were rendered. Because the prior administrative medical findings of Dr. Amon, Dr. Covey, and Dr. Leizer are both supported by and consistent with the weight of the medical and non-medical evidence of record, the undersigned finds them to be persuasive.

(A.R. 18).

Despite finding Dr. Amon's opinion persuasive, the ALJ did not include in the RFC the assessment from the opinion that Plaintiff required an "ad [*i.e.*, assistant device] for long distance/uneven terrain." (A.R. 72).

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). He can lift, carry, push, or pull 20 pounds occasionally and ten pounds frequently; can stand or walk for four hours during an eight-hour workday; can sit for six hours during an eight-hour workday; should avoid climbing ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, or crawl; and should avoid concentrated exposure to hazards.

(A.R. 14-15).

Characterizing Plaintiff's argument as a "red herring," Defendant contends that "an ALJ does not need to wholesale adopt all the limitations found in an opinion, even when accepting some portions of that opinion." (ECF No. 15, p. 9). The Court agrees that an ALJ is not required to adopt all limitations from a medical opinion that is deemed persuasive. *See Swenson v. Sullivan*, 876 F.2d 683, 688 (9th Cir. 1989) ("[A]n ALJ need not agree with everything said by an expert witness to find that his testimony constitutes substantial evidence regarding disability."). However, the pertinent question is whether the ALJ erred by finding Dr. Amon's opinion persuasive but omitting, without explanation, the assessment that Plaintiff required an assistant device under certain conditions. The Court concludes that the ALJ erred in this regard.

As noted above, the governing regulations require an ALJ to articulate how persuasive each medical opinion is and explain how the ALJ considered the supportability and consistency factors. Here, the ALJ's implicit rejection of Dr. Amon's assessment—that Plaintiff required an assistant device—without any explanation as to the relevant factors constitutes error. *See Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) ("By disregarding [medical] opinions and making contrary findings, [the ALJ] effectively rejected them. His failure to offer reasons for doing so was legal error."); *Ismael A. v. Berryhill*, No. EDCV 17-02458-AFM, 2018 WL 6697178, at *4 (C.D. Cal. Dec. 19, 2018) (concluding that an ALJ erred by purporting to accept doctor's opinions but yet implicitly rejecting some of them without providing any reasons).[1]

Accordingly, the question becomes whether the ALJ's error was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (recognizing that "harmless error

---

[1] The Court recognizes that these cases precede the implementation of the new regulations. However, these cases illustrate the basic requirement that applies under the old and new regulations—the ALJ must generally offer some explanation to reject a medical opinion.

applies in the Social Security context"). On this issue, Defendant argues that any error would be harmless because "nothing in the [DOT] descriptions for the occupations the ALJ relied upon at step five [order caller, ticket taker, and cashier II] . . . indicate that they require walking long distances or on uneven terrain" and "[t]he vocational expert testified that all of these positions could be done either in a standing or a sitting position in its entirety, thereby indicating that there are no long distances or uneven terrain involved." (ECF No. 15, p. 10).

While the Court appreciates Defendant's argument, and is not convinced that the additional limitations would preclude Plaintiff from the identified jobs, it also cannot conclude that the ALJ's error was harmless. While the DOT's descriptions for the relevant jobs[2] do not

---

[2] Order caller is described in the DOT as follows: "Reads items listed on order sheets to LABORER, STORES (any industry) who gathers and assembles items or to BILLING TYPIST (clerical) who prepares bills for items. Indicates on order sheets items located and items that are not available. May read items to CHECKER (clerical) I who examines articles prior to shipping. May be designated by kind of data called out to other worker as Weight Caller (clerical); Yardage Caller (textile)." 209.667-014 Order Caller, 1991 WL 671807.

Ticket taker is described in the DOT as follows: "Collects admission tickets and passes from patrons at entertainment events: Examines ticket or pass to verify authenticity, using criteria such as color and date issued. Refuses admittance to patrons without ticket or pass, or who are undesirable for reasons, such as intoxication or improper attire. May direct patrons to their seats. May distribute door checks to patrons temporarily leaving establishment. May count and record number of tickets collected. May issue and collect completed release forms for hazardous events, and photograph patron with release form for permanent records file. May be designated Gate Attendant (amuse. & rec.) or Turnstile Attendant (amuse. & rec.) when collecting tickets at open-air event." 344.667-010 Ticket Taker, 1991 WL 672863.

Cashier II is described in the DOT as follows: "Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.)." 211.462-010 Cashier II, 1991 WL 671840.

specify that one must walk long distances or on uneven terrain to perform them, the DOT is not intended to be the sole or comprehensive source of job information. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (noting that DOT is not sole or comprehensive of job information). Accordingly, "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT." *Id.* Here, the ALJ solicited the testimony of a VE about the characteristics of the jobs at issue, with the VE stating that "the DOT does not address" a sit/stand option for the jobs and that the VE's testimony was based on the VE's "training and experience to supplement the DOT." (A.R. 20, 48).

Any hypothetical posed to the VE, for purposes of determining whether Plaintiff could perform other work, should have included all properly supported limitations because a "vocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."). Here, the hypothetical posed to the VE did not include Dr. Amon's assessment that Plaintiff requires and assistant device for long distances or uneven terrain. (A.R. 46-47). Not being informed of this assessment, the VE did not have the opportunity to opine whether the characteristics of the jobs at issue would allow for such a limitation, and thus the VE's opinion lacks evidentiary value.

The Court recognizes that the VE testified that the jobs at issue could be performed with a sit/stand option, albeit with some erosion in the number of jobs because "not all the work environments afford for a sit/stand option at-will." (A.R. 47). However, some courts have concluded that a sit/stand option does not fully account for the use of an assistant device because the availability of jobs can be eroded further despite the sit/stand option. *See Hines v. Berryhill*, No. 16-CV-03078-JSC, 2017 WL 3251915, at *10 (N.D. Cal. July 31, 2017) ("Similarly, here, if Plaintiff's use of a cane is medically required, the cane could affect Plaintiff's ability to perform certain jobs, including those identified by the VE. The inclusion of a sit/stand option in the ALJ's

hypothetical to the VE did not sufficiently address this issue because, as the regulations and caselaw recognize, the need for a cane may limit the available jobs notwithstanding a sit/stand option."); *McLaughlin v. Colvin*, No. CV 14-9908-PLA, 2015 WL 5567755, at *5 (C.D. Cal. Sept. 22, 2015) ("The Court finds that under the circumstances of this case, including the facts that plaintiff is capable of only sedentary level work and requires a sit/stand option every thirty minutes as needed, and that plaintiff must use a cane when standing or ambulating, the ALJ's failure to seek clarification from the VE as to whether plaintiff's past relevant work in the sedentary positions of sales supervisor and customer service representative provides for a sit/stand option every thirty minutes as needed, was not harmless error."). Because the ALJ never posed a hypothetical to the VE, which included Plaintiff requiring an assistant device, the Court cannot determine whether the additional limitation would have further eroded the availability of jobs, despite the sit/stand option.

Accordingly, the Court concludes that it was error for the ALJ to fail to include, without explanation, Dr. Amon's assessment in the RFC—that Plaintiff requires an assistant device for long distances and uneven terrain. And because the Court cannot conclude that such error "was inconsequential to the ultimate nondisability determination," it does not find the error to be harmless. *Stout*, 454 F.3d at 1055.

As for remedy, Plaintiff states that "remand is necessary for further administrative proceedings and reevaluation of Dr. Amon's opinion" and does not request an award of benefits. (ECF No. 12, p. 11). The Court agrees that remand is the proper remedy and will direct the ALJ on remand to include, or provide sufficient reasons not to include in the RFC, Dr. Amon's opinion that Plaintiff requires an assistant device for long distances and uneven terrain. And if the ALJ incorporates this assessment in the RFC, the ALJ shall include seek additional opinion from a VE in order to determine whether Plaintiff could perform sufficient work including all relevant limitations.

**B.     Plaintiff's Subjective Complaints**

Plaintiff argues that "the ALJ failed to provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of fatigue, imbalance, and difficulties with walking

and standing." (ECF No. 12, p. 7).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause symptoms of the nature alleged." (A.R. 16). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints and the medical evidence as follows:

> The claimant, David A. Trejo, is a 38-year-old with a 12th-grade education. . . . . He alleged that he became disabled on September 1, 2018 due to multiple sclerosis with numbness in his hands and feet, double vision, a loss of balance, fatigue, difficulty walking, and a loss of appetite. (Exhibits 2D, 1E/2). "Vision loss, pain in legs, numb fingers, numb feet [and] fatigue." (Exhibit 3E/1). The claimant reported that his conditions worsened in April 2019: "I am losing my eye sight and my mobility to move is slowing down. My legs are getting numb. I have fallen so many times, I am not able to stand long periods of time, because they are numb." (Exhibit 6E/2, 11E/2). At the hearing, the claimant reported experiencing both acute and chronic complications from his multiple sclerosis. He reported that he experiences two to three flares per year, each of which lasts for two to three months "at least." During such flares, he reported experiencing fatigue, an inability

to walk, and difficulty seeing. He reported having a cane, but using it infrequently. The claimant also reported that he is going blind because of his multiple sclerosis. (Claimant's Testimony). The claimant alleged that his prescribed medication regimen results in unwanted side effects, including fatigue. (Exhibit 8E/5). He also testified to have trouble walking the day after administering his medication injection into his leg. (Claimant's Testimony). The claimant alleged that his impairments limit his abilities to stand, walk, climb stairs, squat, bend, kneel, and see. (Exhibit 3E/6). For example, the claimant reported that he must elevate his legs to chair-height 50 percent of the day; can use his hands to grasp, turn, or twist objects only 50 percent of the day; would be off-task 20 percent of the workday; is incapable of even "low stress" work; and would be absent from work approximately one day per month. (Exhibit 16E).

. . . .

The claimant has a history of multiple sclerosis. He was started on weekly interferon-beta injections during January 2016, but has no history of hospitalizations since the diagnosis was made. He reported an onset of headaches and double vision during April 2019, which resolved with the use of avenox. (Exhibit 2F/3). On May 15, 2019, less than two weeks prior to the filing date, the claimant denied any dizziness, tingling, sensory changes, speech changes, focal weakness, seizures, or loss of consciousness. (Exhibit 2F/4). On exam, the claimant was tearful when discussing stress involving his wife and son. Otherwise, no relevant abnormalities were noted. (Exhibit 2F/5). The only change made to his medication regimen on that date was that his injections were changed to being in the form of a pen rather than a syringe. (Exhibit 2E/6). Upon returning to care on July 17, 2019, the claimant reported that he was doing "okay" despite some worsening symptoms due to the hot weather. No abnormalities were noted on exam. (Exhibit 3F/4). On July 26, 2019, the claimant reported that [he] experiences exacerbations of his multiple sclerosis each April. (Exhibit 6F/2). He denied all symptoms. (Exhibit 6F/3). On exam, he presented with hyperopia of the right eye and emmetropia; however, neither was significant enough to warrant a prescription for corrective lenses. (Exhibit 6F/4-6). On August 19, 2019, the claimant again denied all symptoms and, upon testing, his visual fields were normal. (Exhibit 6F/10). Diagnostic imaging performed on September 9, 2019 showed a new lesion as compared to a December 2018 scan. (Exhibit 8F/4-5). Nevertheless, the claimant reported "doing well" on October 23, 2019, despite having had some compliance issues due to problems with insurance coverage. The only abnormality noted on examination was a "slightly" slowed gait. (Exhibit 8F/3).

On April 24, 2020, the claimant reported that his walking and mobility were good with only two exceptions each year. (Exhibit 9F/5). On exam, left foot range of motion was slow and his gait was mildly ataxic, left greater than right. (Exhibit 9F/6-7). A July 10, 2020 magnetic resonance imaging scan yielded findings consistent with multiple sclerosis; however, as compared to the scans from September 9, 2019, there was no definitive evidence of new lesions. "There is no associated enhancement to suggest active demyelination." There was also evidence

of "minimal" cervical degenerative disc disease. (Exhibit 10F/3-4). . . .
(A.R. 15-16).

After this summary, the ALJ concluded that Plaintiff's allegations were "not fully consistent with or supported by the medical evidence of record." (A.R. 17). Noting some "abnormalities" with Plaintiff's multiple sclerosis, the ALJ concluded that "none have been persistently present nor reasonable commensurate with the degree of limitation alleged." (A.R. 17). Among other things, the ALJ noted that Plaintiff had not lost sensory perception in his hands or feet, that he had only slight vision deficits that did warrant a prescription for corrective lenses, and that he had no significant or persistent difficulties walking.

Additionally, the ALJ noted that Plaintiff had received routine conservative care since before the alleged onset of disability, that his care had generally proven to be effective, with Plaintiff generally denying symptoms or reporting to be in good condition during most exams. And the ALJ concluded that Plaintiff's work record and daily activities undermined his complaints. Plaintiff worked as a barber—six hours per day and four days per week—for a period of time after the alleged onset of disability. And the ALJ referenced a discussion earlier in the opinion about Plaintiff's abilities, including that he could prepare meals, do household chores, and take care of his personal grooming.

Upon review, the Court concludes that the ALJ did not err in rejecting Plaintiff's subjective complaints. First, the ALJ reasonably relied on the medical evidence, such as relatively normal examination findings and Plaintiff denying symptoms, to discount the degree of limitations that Plaintiff alleged. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Citing the conflict between Morgan's testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined Morgan's credibility."). While Plaintiff argues that the ALJ improperly discounted Plaintiff's complaints based "on Plaintiff's presentation during periods of remission and examination findings recorded during such periods," the ALJ cited records

1    of relatively normal findings during periods Plaintiff's categorizes as "multiple sclerosis
2    flares." (ECF No. 12, p. 8); (*see* A.R. 16 citing July 2019 report where Plaintiff reported
3    doing okay despite some worsening symptoms due to hot weather, October 2019 report
4    where Plaintiff stated he was doing well, citing December 2020 report where Plaintiff
5    stated he had been doing ok until a fall in April 2020).

6    Moreover, the lack of corroborating evidence for Plaintiff's symptoms was another basis
7    to discount his allegations. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While
8    subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by
9    objective medical evidence, the medical evidence is still a relevant factor in determining the
10   severity of the claimant's pain and its disabling effects."). "For example, the record
11   [did] not document exacerbations of [Plaintiff's] medical conditions that occur with such
12   frequency as would reasonably give rise to a conclusion that the claimant would be absent from
13   work with any regularity." (A.R. 17).

14   Lastly, the ALJ reasonably concluded that Plaintiff's level of functioning, including his
15   ability to work as a barber after the alleged onset date of disability, suggested that Plaintiff was
16   not as limited as claimed. (A.R. 17). While Plaintiff correctly argues that such work is not
17   necessarily inconsistent with disability, it is still one basis, among others, to properly discount
18   Plaintiff's allegations. *See Timmons v. Comm'r of Soc. Sec.*, 546 F. Supp. 2d 778, 795 (E.D. Cal.
19   2008) (concluding that Plaintiff properly rejected a plaintiff's claim of being unable to work
20   based, in part, on the plaintiff having a part-time job).

21   Accordingly, the ALJ provided legally sufficient reasons for not giving full weight to
22   Plaintiff's subjective complaints and the Court affirms on this issue.

23   **C.    Lay Testimony**

24   Lastly, Plaintiff argues that the ALJ erred by failing to articulate any rationale for
25   rejecting the lay witness statements of Plaintiff's father. (ECF No. 12, p. 12). On this issue, the
26   ALJ stated that the lay witness statements were "fully considered" but that "no written analysis of
27   the[] statements [was] required." (A.R. 19). The parties dispute the applicable standard, with
28   Plaintiff arguing that the ALJ is required to provide germane reasons to discount lay witness

statements, and Defendant arguing that, under relevant new regulations, the ALJ only need consider such statements. (ECF No. 12, p. 12; ECF No. 15, p. 12).

Ultimately, the Court need not resolve this dispute because the ALJ's opinion is sufficient under either standard. *See Neri v. Comm'r of Soc. Sec.*, No. 1:21-CV-01235-SAB, 2022 WL 16856160, at *7 (E.D. Cal. Nov. 10, 2022) (opining that, under the revised regulations, an ALJ must consider, but not necessarily articulate how the ALJ considered lay testimony, and concluding that, in any event, the result would be the same if the germane-reasons standard applied). Importantly, courts have declined to reverse on this issue where an ALJ provided clear and convincing reasons to reject a Plaintiff's complaints, where such complaints were similar to the lay testimony. *See Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Here, the lay witness statements from Plaintiff's father were similar to Plaintiff's own complaints, including assertions that Plaintiff has poor eyesight, has trouble walking, and experiences pain. (A.R. 251-58). As discussed above, the ALJ provided sufficient reasons to reject Plaintiff's complaints. Accordingly, the opinion likewise contained germane reasons to reject the similar statements from Plaintiff's father, and the Court affirms on this issue.

## II. CONCLUSION AND ORDER

For the reasons given, this case is **REVERSED**, in part, and **REMANDED** for further proceedings consistent with this opinion. On remand, the ALJ shall include, or provide sufficient reasons not to include in the RFC, Dr. Amon's assessment that Plaintiff requires an assistant device for long distances and uneven terrain. And if the ALJ incorporates this assessment in the RFC, the ALJ shall include seek additional opinion from a VE in order to determine whether Plaintiff could perform sufficient work including all relevant limitations.

\\\
\\\
\\\

The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff and against Defendant.

IT IS SO ORDERED.

Dated: **March 30, 2023**    /s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE